UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY F. STEINMEYER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No.17-cv-05497-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 27 & 29 |

Plaintiff Gregory Steinmeyer seeks social security benefits for bilateral leg pain and edema secondary to post-hernia surgery. (Administrative Record ("AR") 225.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 27 & 29.) Because the Administrative Law Judge's treatment of the medical evidence and adverse credibility finding were not supported by substantial evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

## **LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 18 & 21.)

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

**PROCEDURAL HISTORY**

In June 2014, Plaintiff filed an application for Social Security Disability Insurance Benefits under Title II and Title XVIII of the Social Security Act. (AR 177.) Plaintiff alleged disability beginning August 15, 2008 caused by nerve damage and chronic hernia. (AR 177, 225.) The applications were denied initially and on reconsideration. (AR 22.) Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (*Id*.) On February 3, 2016, a hearing was held before ALJ Robert Freedman, in San Jose, California, during which both Plaintiff and a vocational expert ("VE") Darlene McQuary testified. (AR 36.) At the hearing, Plaintiff amended his disability onset date to October 6, 2013. (AR 22, 55-56.)

I. **The ALJ's Findings**

On April 6, 2016, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step

sequential evaluation process for determining disability. (AR 22-31.); *see* 20 C.F.R. § 404.1520(f).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 6, 2013, his amended alleged onset date, through December 31, 2014, his date of last insured. (AR 24); *see* 20 C.F.R. § 404.1571 *et seq.*

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff had the following "severe impairments" within the meaning of the regulations: bilateral leg pain and edema secondary to the claimant's post-hernia surgery. (AR 24); *see* 20 C.F.R. § 404.1520(c). The ALJ also considered whether Plaintiff's obesity constituted a severe impairment and determined that it did not because the record did not reflect that it had any effect on his physical functioning or ability to do basic work activities, and the treatment has been conservative. (AR 25.) Likewise, the ALJ found Plaintiff's depression and post-traumatic stress disorder to be non-severe because he has never received a diagnosis for a mental impairment and has not received any formal mental health treatment. (*Id.*)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) such that Plaintiff could stand/walk for up to six hours; sit up to six hours; lift/carry up to 10 pounds frequently and 20 pounds occasionally, but that Plaintiff must have the ability to alternate between a sitting and standing position once per hour for a duration of up to five minutes while remaining on task. (AR 26.) Plaintiff was limited to occasional kneeling, crawling, and use of ladders and scaffolds. (*Id.*) To reach this conclusion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 29.) The ALJ noted that although Plaintiff reported pain subsequent to his surgeries, "he did not undertake any physical therapy or other

exercises to assist in treating his condition." (*Id.*) The ALJ also focused on the fact that Plaintiff had not left a position due to disability and that he "had testified that he was not offered full time work by either employer but would have accepted if offered, suggesting the claimant is physically capable of performing his past relevant work." (*Id.*) Further, Plaintiff's "physical impairments have no more than mildly affected his activities of daily living." (*Id.*)

As far as the medical opinion evidence, the ALJ credited the opinion of the State Agency medical consultants because their "assessments are consistent with the medical evidence of record as they were able to review the medical record and consider the claimant's complaints to treating physicians and clinical observations noting the claimant's generally normal physical examinations with some limited range of motion in his lower extremities due to pain." (AR 28.) The ALJ also accorded great weight to the opinion of the consultative psychological examiner that Plaintiff had no significant mental impairment which was consistent with the medical record as a whole. (*Id.*) The ALJ gave only partial weight to the opinion of the consultative medical examiner Nayyar Masood because his assessment was "overly conservative." Finally, the ALJ accorded partial to little weight to the opinion of Plaintiff's treating physician Robert Burns because "[w]hile [his] prognosis and lifting and sitting/standing requirements are generally consistent with the medical record, the statements that claimant must miss four days of work and [that] his condition would last at least 12 months are not consistent with the medical record." (AR 28.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a "New Account Sales Representative" because "the work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565)." (AR 29-30.)

At step five, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act, at any time from his amended alleged onset date of October 6, 2013, through his date of last insured, December 31, 2014. (AR 31.)

**II.     The Appeals Council**

The Appeals Council denied Plaintiff's request for review on July 18, 2017, making the ALJ's decision final. (AR 1-3.)

4

**III.     This Action**

Plaintiff commenced this action for judicial review on September 21, 2017 pursuant to 42 U.S.C. §§ 405(g), 1361. (Dkt. No. 1.) Both parties thereafter consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 18 & 21.) Plaintiff then filed her motion for summary judgment and the Commissioner filed her cross-motion. (Dkt. Nos. 27 & 29.)

**DISCUSSION**

Plaintiff raises four primary issues with the ALJ's decision. First, Plaintiff contends that the ALJ failed to consider all the medical evidence and failed to provide clear and convincing reasons supported by substantial evidence for favoring the opinion of the non-examining physicians over the examining physician and Plaintiff's treating physician. Second, Plaintiff maintains that the ALJ erred with respect to his rejection of Plaintiff's testimony regarding his pain and the limiting effects of his disability. Third, Plaintiff insists that the ALJ likewise erred with respect to his rejection of the lay testimony. Finally, Plaintiff argues that the ALJ's step four finding is not supported by substantial evidence.

**I.      The ALJ's Evaluation of Medical Opinion Evidence**

**A. Legal Standard**

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). "A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). And "even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d

at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (internal citation omitted). Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In conducting its review, the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th Cir. 2012) (internal citations omitted). "An ALJ may not cherry-pick and rely on portions of the medical record which bolster his findings." *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that indicate continued, severe impairment"). "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.

### B. The ALJ Erred in Evaluating the Medical Evidence

The ALJ committed several errors with respect to the medical evidence.

First and most critically, the ALJ failed to note that both Plaintiff's treating physician Dr. Burns, and the examining physician Dr. Masood, found that Plaintiff needed to be able to elevate his legs. (AR 388 (Dr. Masood: "in an eight-hour workday, the claimant could sit for six hours a day with usual breaks as tolerated, keeping his legs elevated as much as possible"); AR 392 (Dr. Burns Questionnaire, Q: "With prolonged sitting, should your patient's leg(s) be elevated?" A: "Yes," "50%" of the time in an eight-hour day).) Although both physicians included this limitation in their functional capacity evaluations, it is nowhere mentioned in the ALJ's opinion either in the context of these physicians' opinions or in the general context of the ALJ's evaluation of Plaintiff's residual functional capacity.[2] The Commissioner's argument that any such omission is immaterial because neither physician found that the ability to elevate his legs was a "requirement" rests on semantics—both physicians included the limitation in their functional capacity evaluation. They were not required to use any magic words in doing so. The ALJ erred in ignoring this significant limitation imposed by both Dr. Masood and Dr. Burns.[3] *See Garrison*, 759 F.3d at 1012 ("[A]n ALJ errs when he rejects a medical opinion ... while doing nothing more than ignoring it"); *see also Samples v. Comm'r of Soc. Sec. Admin.*, 466 F. App'x 584, 586 (9th Cir. 2012) ("the ALJ's assessment improperly ignored Dr. Wahl's description and diagnoses of a functional limitation on [plaintiff's] ability to accept instructions from supervisors and to respond appropriately to criticism from supervisors, rendering the RFC defective.").

Second, the ALJ's conclusion that Dr. Burns' opinion was entitled to little weight because it was "quite conclusory" and because there was a possibility that "a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another...and [w]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case" is not supported by substantial evidence. (AR 29.) The ALJ found

---

[2] The only reference is in the portion of the ALJ's opinion summarizing Plaintiff's testimony which notes that "he elevates his legs while sitting." (AR 27.)
[3] The ALJ also failed to address Dr. Burns' finding that Plaintiff would need to take 10 minute unscheduled breaks twice a day. (AR 83.)

7

that Dr. Burns' opinion was "conclusory" because it was provided on the form for a "Physician's Medical Source Statement." However, where a physician has an established treating relationship with a claimant—as Dr. Burns did having treated Plaintiff for the six months prior—that the physician "provided information in a check-box form provides no reason to reject [his] opinions, much less a germane reason." *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Dr. Burns' conclusion on the form that Plaintiff would need to elevate his legs 50% of the time during an eight-hour workday is consistent with his treatment notes. *See, e.g.*, (AR 395 (2/23/15 Progress Notes "elevate when possible" in reference to leg pain); AR 399 (7/22/15 Progress Notes "elevate legs at rest"). Where supported by the record, opinions on a check-box form are entitled to substantial weight. *See Garrison*, 759 F.3d at 1013.

The ALJ's suggestion that Dr. Burns' opinion could have been colored by his sympathies for Plaintiff is unsupported by the record. "The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits. While the Secretary may introduce evidence of actual improprieties, no such evidence exists here." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996) (internal citation and quotation marks omitted). So too here. Dr. Burns notes that Plaintiff had forms he needed completed (AR 395) and that he "wants forms filled out for disability, has an attorney working with him to get SSI" (AR 401) is not evidence of Dr. Burns's lack of impartiality. The Ninth Circuit has consistently held that "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."[4] *Lester*, 81 F.3d at 832.

Finally, the ALJ erred in favoring the opinions of the non-examining consultative physicians over the opinions of the examining physician and Plaintiff's treating physician because

---

[4] The cases cited by the Commissioner are unpersuasive. *Meador v. Astrue*, 357 F. App'x 764, 765 (9th Cir. 2009), contains no explaination of how the physician appeared to be acting as an advocate, but cites to *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996), as amended (Aug. 12, 1996), where—unlike here—the "ALJ cited to evidence of 'actual improprieties' in [the physician's] report." In *McCutcheon v. Astrue*, 378 F. App'x 649, 651 (9th Cir. 2010), the court held that "the ALJ did not err in partially rejecting [the physician's] analysis, because his evaluation was done at the request of an attorney and was not based on objective medical evidence." Here, however, there is objective medical evidence supporting his conclusion that Plaintiff needed to be able to elevate his legs. (AR 395, 399.)

8

the opinions of nonexamining doctors "cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Revels v. Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017) (internal citation and quotation marks omitted).

Given these errors, the ALJ's findings regarding the medical evidence are not supported by substantial evidence. These errors were not harmless in light of the VE's testimony that the need to elevate his legs throughout the workday would eliminate Plaintiff's ability to perform his past relevant work.[5] (AR 84.) *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

**II. The ALJ's Credibility Determination**

    **A. Standard for Assessing Credibility**

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "General findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[ ][is] not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see*

---

[5] The VE also testified that the need to take 10 minute unscheduled breaks twice a day—another limitation not addressed by the ALJ—would prevent Plaintiff from performing his past relevant work. (AR 83, 392.)

9

*also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted).

**B. Analysis**

Applying a two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms" was not entirely consistent with the medical evidence and other evidence in the record. (AR 29.) Since Plaintiff met the first part of the test, the ALJ could only reject Plaintiff's testimony regarding the severity of his symptoms due to evidence of malingering or by offering specific, clear and convincing reasons for doing so. *See Lingenfelter*, 504 F.3d at 1036. The ALJ advanced three reasons for the adverse credibility finding here; none of which is supported by substantial evidence.

First, the ALJ relied on Plaintiff not having undertaken any physical therapy or any special exercises since his surgeries. (AR 29.) While the record does not contain evidence of Plaintiff participating in physical therapy following his surgeries, there is no evidence that this is because Plaintiff declined to pursue a course of treatment recommended by his physicians.[6] Rather, there is simply Plaintiff's testimony that after his June 2014 surgery he "[p]retty much tried to pull myself together. Not a lot of therapy there. You'll probably note there wasn't a lot of therapy...I prefer, because I'm a stubborn German extraction, to work through this myself." (AR 60.) However, the record does contain evidence of Plaintiff's compliance with the recommendation of his treating physician that he elevate his legs when seated. (*Compare* AR 399 (Dr. Burns recommendation to "elevate legs at rest") *with* AR 65, 72 (hearing testimony re "keeping legs elevated").) The ALJ's conclusion that Plaintiff was not credible because he did not pursue

---

[6] The pages cited by the ALJ do not indicate that Plaintiff failed to pursue physical therapy. (AR 27 citing 1F/6 (AR 310 (no reference to physical therapy)); 7F/2 (AR 395 (Assessment and Plans include "low sodium diet, compression stockings, and elevate when possible)); 8F generally (AR 417-501 (85-pages of treatment records from October 6, 2013 through July 1, 2014 covering the second hernia surgery)).)

10

physical therapy is not a clear and convincing reason supported by substantial evidence for rejecting Plaintiff's subjective pain testimony given Plaintiff's compliance with his treating physician's recommendation that he elevate his legs.[7]

Second, the ALJ relied on Plaintiff's testimony that he was laid off from his last position due to budget reasons and that he would have accepted full time employment if it was offered which "suggest[s] the claimant is physically capable of performing his past relevant work." (AR 29.) The ALJ misstated Plaintiff's testimony with respect to his desire for full-time employment.

> Q: Okay. And during these periods that you were working for them part-time, is there a reason why you didn't work full-time for them?
>
> A: Well, partly because I was hired on at a part-time capacity. That's all the hours they could spare *and also because of, again, my condition. I'd already had surgeries and the nerve damages was already there*. And –
>
> Q. Right.
>
> A. –*that limited me in a lot of ways*. Fortunately, the job was within walking distance, so I –
>
> Q. Okay.
>
> A. Since I don't drive, that made it a lot –
>
> Q. If –
>
> A. – easier.
>
> Q. If they had offered you more hours during this time period, again, we're talking 2012, would you have been able to work more hours during that time period?
>
> A. Honestly, sir, I couldn't say. I certainly needed the money, but since it wasn't offered, I went with that, but undoubtedly, *since I needed the money, I would have made my best effort*."

(AR 49-50 (emphasis added).) Read in context, Plaintiff's testimony does not support the ALJ's

---

[7] Plaintiff's suggestion that the ALJ's reliance on his failure to obtain physical therapy as a basis for the adverse credibility finding violated Social Security Ruling 82-59 is misplaced. The Ninth Circuit has held that an ALJ need not follow SSR 82-59 in evaluating credibility whereas it must follow the regulation in considering whether a condition is disabling. *See Molina*, 674 F.3d at 1114 n.6.

11

conclusion that Plaintiff was physically capable of performing his past work; instead, it suggests that he needed money and would have made his best effort despite the fact that his condition made it difficult. Plaintiff's testimony regarding his ability to perform his past work is thus not a clear and convincing reason supported by substantial evidence for the adverse credibility finding.

Finally, the ALJ found that "claimant's physical impairments have no more than mildly affected his activities of daily living." (AR 29.) The ALJ, however, ignored that Plaintiff testified that he did all of these things with the assistance of his caregiver:

> Q. Okay. And so tell me more about the types of things that she assists you with.
>
> A. Grocery shopping, taking me to appointments, getting me out as much as she can when she's there, which is just about all the time, but getting basics done, being there for moral support.
>
> Q. Okay.
>
> A. I couldn't do it without her.

(AR 74.) That Plaintiff is able to perform these tasks with help from his caregiver and is able to make a one pot meal and clean his house for 10 minutes once or twice a week does not translate into his ability to hold down full-time employment. (AR 75-77.) Plaintiff must be "able to spend a *substantial part* of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (internal citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (remarking that activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with the [c]laimant's claimed limitations" and finding that the ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," and in paraphrasing record material that was "not entirely accurate regarding the content or tone of the record").

The ALJ's adverse credibility finding was thus not based on clear and convincing reasons supported by substantial evidence.

\* \* \*

Given the Court's conclusion that the ALJ's evaluation of medical evidence and the adverse credibility finding were in error and both of these formed the basis for the RFC and the finding of non-disability, the Court declines to consider Plaintiff's additional arguments. The ALJ's errors here were not harmless and thus the ALJ's decision must be reversed. *See Molina*, 674 F.3d at 1122 (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

**III. Remand**

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, id., and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

Here, the ALJ failed to provide legally sufficient reasons both for rejecting the limitation found by Dr. Masood and Dr. Burns that Plaintiff must be allowed to elevate his legs throughout the day and for his adverse credibility finding. If this evidence were credited as true, Plaintiff

13

would not be able to perform his past relevant work based on the VE's testimony. (AR 84.) Plaintiff insists that because he was 62 on the date of the ALJ's decision, if he cannot return to his past relevant work he would be found disabled under the ALJ's light RFC. (Dkt. No. 27 at 14:17-20 (citing 20 C.F.R. Pt. 404, Subpt P., App. 2, § 201.06).[8]) However, 20 C.F.R. § Pt. 404, Subpt. P, App. 2 202.00(c) states that "for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." Because the record does not contain information regarding whether Plaintiff possessed skills transferable to a significant range of semi-skilled or skilled work that was within his functional capacity, the Court cannot hold that the ALJ would have been required to find him disabled under Section 201.06. *See Gregory v. Bowen*, 844 F.2d 664, 667 n.1 (9th Cir. 1988) (concluding that because of plaintiff's advanced age he had no transferable skills and fell within Rule 201.06 and should have been deemed disabled). Accordingly, the matter must be remanded to resolve this outstanding issue. *See Navarro v. Berryhill*, No. 16-2435-PLA, 2017 WL 3131963, at *6 (C.D. Cal. July 24, 2017).

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 27) and DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. No. 29). The Court VACATES the ALJ's final decision and REMANDS so the ALJ can make a finding as to whether Plaintiff possessed skills transferable to a significant range of semi-skilled or skilled work that were within his functional capacity.

**IT IS SO ORDERED.**

Dated: August 27, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[8] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

14